UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD P. VANCIL and DEBORAH Y. VANCIL, husband and wife,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al.,<br><br>　　　　　　Defendants. | CASE NO. C12-5775 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT |

　　　This matter comes before the Court on Plaintiffs Richard and Deborah Vancil's ("Vancils") motion for partial summary judgment (Dkt. 24); Defendants U.S. Bank, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-0PTI ("U.S. Bank") and American Home Mortgage Servicing, Inc., n/k/a Homeward Residential, Inc.'s ("AHMSI") motion for summary judgment (Dkt. 26); and Defendant Fidelity National Title Insurance Company's ("Fidelity") motion for summary judgment joining Defendants' motion for summary judgment (Dkt. 28).  The Court has considered the pleadings filed in support of and in opposition to the

motions and the remainder of the file and hereby grants in part and denies in part the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 16, 2012, the Vancils filed an amended complaint in Kitsap County Superior Court for the State of Washington against U.S. Bank, AHMSI, and Fidelity. Dkt. 1, Exh. B ("Comp."). The Vancils allege that defendants were improperly attempting to foreclose on their home and essentially asserted two claims: (1) declarations that certain notices and actions did not comply with the Washington Deed of Trust Act, RCW Chapter 61.24 ("DTA") and (2) a violation of the Washington Consumer Protection Act ("CPA"). *Id*. §§ III–X.

On November 7, 2012, the Court granted the Vancils' motion for a preliminary injunction to restrain the scheduled Trustee's sale of their home. Dkt. 20.

On May 30, 2013, the Vancils filed a motion for partial summary judgment. Dkt. 24. On June 19, 2013, Defendants U.S. Bank and AHMSI responded (collectively "Defendants"). Dkt. 31. On June 27, 2013, the Vancils replied. Dkt. 36.

On June 12, 2013, Defendants filed a motion for summary judgment. Dkt. 26. On July 1, 2013, the Vancils responded. Dkt. 37. On July 5, 2013, Defendants replied. Dkt. 38.

## II. FACTUAL BACKGROUND

On June 22, 2006, the Vancils obtained a loan through Preferred Mortgage Solutions. They signed a Note and Deed of Trust on their home located at 13732 Sunrise Drive, Bainbridge Island, Kitsap County, Washington 98110-4159 (the "Property").

1    In January 2010, the Vancils applied for a mortgage modification to reduce their
2 escalating ARM payments.  On June 14, 2010, AHMSI forwarded a modification
3 agreement that required immediate approval with payment.  Dkt. 25, Declaration of
4 Deborah Vancil ("Vancil Dec."), ¶ 13.  There are differing stories about what transpired
5 for the next few months, but, on March 24, 2011, Fidelity issued a Notice of Default.  *Id.*,
6 Exh. B.  The Vancils allege that the amount of default was inconsistent with the amount
7 AHMSI had stated previously and that the notice failed to comply with the DTA.  On
8 April 26, 2011, Fidelity issued a Notice of Trustee's sale.  *Id.*, Exh. G.  On July 20, 2011,
9 Fidelity issued a Notice of Discontinuance of Trustee's Sale.  *Id.* ¶ 44.

10   On July 13, 2011, AHMSI sent the Vancils a letter describing HUD's Emergency
11 Homeowner Loan Program.  The Vancils submitted an application on July 22, 2011, but
12 on July 29, 2011, they received a notice that they were not eligibile for the loan program.
13 *Id.* ¶ 45.

14   On March 29, 2012, Fidelity issued a second Notice of Default.  *Id.* Exh. N.
15 ("2012 Notice of Default").  The Vancils assert that the notice does not comply with
16 certain provisions of the DTA and the Deed of Trust was not attached to the notice.  On
17 May 29, 2012, Fidelity issued a Notice of Trustee's sale.

18   On July 31, 2013, the Vancils filed the instant lawsuit in state court.  The lawsuit
19 was removed to this Court, and the Vancils obtained a preliminary injunction preventing
20 the foreclosure to proceed.  Since entry of the preliminary injunction, the Vancils have
21 paid into the registry of the Court each month the sum of $5,652.50, as required by the
22 order.  The total amount in the Court registry is in excess of $45,000. Vancil Dec. ¶ 60.

ORDER - 3

## III. DISCUSSION

The Vancils move for summary judgment on their claims for a declaratory judgment that Defendants violated the DTA. Dkt. 24 at 1. They request that the Court issue a permanent injunction, order that the money in the Court registry be returned to the Vancils, declare that Defendants do not have standing to enforce the Vancils' Note or Deed of Trust, and award them their reasonable attorney's fees. *Id*. at 2. During briefing, the Vancils dropped their request that Defendants do not have standing.

Defendants move the Court for an order "dismissing" the Vancils' complaint "with prejudice pursuant to Fed.R.Civ.P. 56 . . . ." Dkt. 26 at 2. The dismissal and entry of judgment language is most likely comingled because Defendants seek dismissal for lack of standing on the Vancils' DTA claims and entry of judgment for lack of admissible evidence on the Vancils' CPA claim. With this in mind, the Court turns to the merits of the motions.

**A.    Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

1 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

2 present specific, significant probative evidence, not simply "some metaphysical doubt").

3 *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

4 if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

5 jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

6 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

7 626, 630 (9th Cir. 1987).

8       The determination of the existence of a material fact is often a close question. The

9 Court must consider the substantive evidentiary burden that the nonmoving party must

10 meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

11 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

12 issues of controversy in favor of the nonmoving party only when the facts specifically

13 attested by that party contradict facts specifically attested by the moving party. The

14 nonmoving party may not merely state that it will discredit the moving party's evidence

15 at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

16 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

17 nonspecific statements in affidavits are not sufficient, and missing facts will not be

18 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   Standing**

Article III, § 2, of the Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies."[1]  That case-or-controversy requirement is satisfied only where a plaintiff has standing.  *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).  In order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly . . . trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (calling these the "irreducible constitutional minimum" requirements).

In this case, Defendants argue that the Vancils lack standing to bring suit because there is no justiciable controversy.  Dkt. 26 § III-B.  Defendants assert that the pending foreclosures have been cancelled and, therefore, "the Vancils' potential challenges to a foreclosure that has neither occurred or is pending fails [sic] present an actual dispute or the mature seeds of one."  *Id*. at 11.  The Court agrees that the Vancils do not face a pending foreclosure.  The Court also agrees that the 2011 Notice of Default and the 2011

---

[1] Defendants suggest that the Court should consider standing pursuant to state law, specifically the Washington Uniform Declaratory Judgment Act, RCW Chapter 7.25. Dkt. 26 at 10–12. Standing, however, is a constitutional restriction analyzed under federal law regardless of whether subject matter jurisdiction is conferred via a federal question or based on diversity. Therefore, the Court declines to accept Defendants' authorities on this issue.

1 and 2012 Notice of Trustee's sale do not present actual controversies because the 2011 Notice of Default has been replaced by the 2012 Notice of Default and the statutory time limit has run on the Notices of Trustee's sale. Defendants, however, make a critical mistake with regard to the 2012 Notice of Default and their argument that the case is now moot.

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, ––– U.S. –––, 132 S.Ct. 2277, 2287 (2012); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)). The standard for determining whether a defendant's voluntary conduct moots a case is "stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted); *see also White v. Lee*, 227 F.3d 1214, 1242–44 (9th Cir.2000). The "heavy burden" lies with the party asserting mootness to demonstrate that, after a voluntary cessation, "the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted).

In this case, the Vancils argue that the 2012 Notice of Default is still in effect and Defendants may proceed with a foreclosure based on that notice. Dkt. 37 at 15–20. This

argument makes sense because once a party is in default, the party remains in default unless the default is either cured or rescinded by the party declaring the default. The Court is unaware of, and Defendants have failed to provide, any authority to the contrary. If the 2012 Notice of Default is in effect, it appears that Defendants may initiate a new foreclosure proceeding without issuing a new Notice of Default once the preliminary injunction is dissolved. Defendants' response to this assertion is that such an action is based on mere "speculation" and that "[i]t is likely that Defendants will issue a new Notice of Default if another foreclosure is pursued." Dkt. 38 at 4. Such a response completely fails to meet the "heavy burden" to show that the "challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted). Therefore, the Court grants in part and denies in part Defendants' motion to dismiss this action for lack of standing, and the Vancils are entitled to a determination of whether the 2012 Notice of Default complies with the DTA.

**C.    DTA**

Under the DTA, A proper notice of default is a prerequisite to a foreclosure. RCW 61.24.030(8). Three provisions of RCW 61.24.031 are at issue and provide as follows:

> (1)(a) A trustee, beneficiary, or authorized agent may not issue a notice of default under RCW 61.24.030(8) until thirty days after initial contact with the borrower as required under (b) of this subsection or thirty days after satisfying the due diligence requirements as described in subsection (5) of this section.
> (b) A beneficiary or authorized agent shall contact the borrower by letter and by telephone in order to assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure. The letter required under this subsection

1    must be mailed in accordance with subsection (5)(a) of this section and must include the information described in subsection (5)(a) and (e)(i)
2    through (iv) of this section.
        (c) During the initial contact, the beneficiary or authorized agent
3    shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the beneficiary or authorized agent shall schedule
4    the meeting to occur within fourteen days of the request. . . .
        (2) A notice of default issued under RCW 61.24.030(8) must include
5    a declaration, as provided in subsection (9) of this section, from the beneficiary or authorized agent that it has contacted the borrower as
6    provided in subsection (1)(b) of this section . . . . . . .
        ***
7    (9) The form of declaration to be provided by the beneficiary or authorized agent as required under subsection (2) of this section must be in
8    substantially the following form:
        . . . The undersigned beneficiary or authorized agent for the
9    beneficiary hereby represents and declares under the penalty of perjury that . . . .

10 RCW 61.24.031.

11

12 In this case, the Vancils assert that the 2012 Notice of Default does not comply

13 with the DTA for three reasons. First, the Vancils assert that the notice did not "contain a

14 declaration under penalty of perjury confirming that the beneficiary or the beneficiary's

15 agent had contacted the borrower to explore options for avoiding foreclosure and

16 otherwise provide information under the statute." Dkt. 37 at 11. The Court agrees. The

17 notice does state that "[t]he beneficiary or the beneficiary's authorized agent has

18 exercised due diligence to contact the borrower as required in RCW 61.24.013(5)." 2012

19 Notice of Default § 2. This statement, however, is not made under penalty of perjury.

20 Therefore, the Court grants the Vancils' motion for summary judgment on this issue and

21 denies Defendants' motion for summary judgment on this issue.

22

ORDER - 9

Second, the Vancils contend that the notice did not contain the required exhibits such as the Deed of Trust. Dkt. 37 at 11. Although the notice provides that the deed is attached as Exhibit A ("2012 Notice of Default § 2"), Defendants fail to offer admissible evidence to counter the Vancils' evidence showing that the deed was not attached. Therefore, the Court grants the Vancils' motion on this issue because Defendants have failed to show that a material question of fact exists for the factfinder.

Third, the Vancils contend that, prior to issuing the notice, neither the lender nor its agent contacted the Vancils regarding alternatives to foreclosure. Dkt. 37 at 21–22. On this issue, Defendants have submitted evidence of numerous conversations between the Vancils and the lender. *See* Dkt. 38 at 5 (citing numerous correspondences). Therefore, the Court denies both motions for summary judgment on this issue because material questions of fact exist for the factfinder.

**D.      CPA**

Under the CPA, plaintiffs must prove: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the plaintiffs business or property; and (5) that injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title*, 105 Wn.2d 778, 780 (1986). "It is an unfair or deceptive act . . . in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to . . . fail to initiate contact with a borrower and exercise due diligence as required under RCW 61.24.031." RCW 61.24.135(2).

In this case, Defendants move for summary judgment on the Vancils' CPA claim. Dkt. 26 at 16. At the very least, the Court has found that questions of fact exist whether the lender initiated contact with the Vancils under RCW 61.24.031. Therefore, the Court denies Defendants' motion on this issue.

**E.     Permanent Injunction, Attorney's Fees, Return of Deposits**

The Vancils move for the entry of a permanent injunction, attorney's fees, and the return of deposits the Vancils have been making to the Court. Dkt. 24. The Court denies these portions of the motion as premature because these issues are normally addressed post trial and before the entry of final judgment.

**F.     Fidelity's Motion**

Fidelity's motion (Dkt. 28) and reply (Dkt. 39) merely incorporate Defendants' motion and provide no additional substantive argument. Therefore, identical to Defendants' motion, the Court grants the motion in part and denies the motion in part.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Vancils' motion for partial summary judgment (Dkt. 24), Defendants motion for summary judgment (Dkt. 26), and Fidelity's motion for summary judgment (Dkt. 28) are **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 26th day of July, 2013.

BENJAMIN H. SETTLE
United States District Judge